UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

STEPHEN KELEMEN and GAIL KELEMEN,

        Plaintiffs,

vs.

                                CASE NO.: 6:09-CV-1639-ORL-28-DAB

PROFESSIONAL COLLECTION SYSTEMS,

        Defendant.

_____/

### DEFENDANT, PROFESSIONAL COLLECTION SYSTEMS' MOTION FOR SUMMARY JUDGMENT WITH SUPPORTING MEMORANDUM OF LAW

COMES NOW, the Defendant, PROFESSIONAL COLLECTION SYSTEMS, INC. (hereinafter referred to as "PCS"), by and through its undersigned attorneys and pursuant to Rule 56, Federal Rules of Civil Procedure, hereby requests entry of Summary Judgment in its favor and against Plaintiffs, STEPHEN KELEMEN and GAIL KELEMEN (hereinafter referred to as "Plaintiffs"), and as grounds therefore states:

### Motion for Summary Judgment

1.      Plaintiffs brought this original action against Defendant, PCS asserting violations of the federal Fair Debt Collection Practices Act ("FDCPA") arising out of the collection communications on behalf of Florida Hospital **[Dk. 1]**

2.      Defendant denies all liability and damages as to the claims under the FDCPA which are currently alleged against it in Plaintiff's Complaint, and, recently amended Complaint, and further maintains the claims raised by the Plaintiff have no merit.

3.     Defendant is entitled to summary judgment as a matter of law since Plaintiffs' claims that Defendant PCS violated the FDCPA are not supported by the material facts. Defendant contends there is no genuine issue of material fact to support said allegations and as a matter of law, PCS is entitled to judgment in its favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     PCS was retained to recover amounts allegedly due and owing by Stephen and Gail Kelemen on several Florida Hospital medical bills. **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

2.     PCS utilizes and maintains computer records which detail the collection activities account information received from its original creditor clients such as Florida Hospital and is in possession of the collection notes associated with Accounts ManageMed numbers: 3158830, 2666046, 3432464, 3557673, 3596596, 3790209, 4007466, 4007463, 441013, 1808536, 1808539, 4622484, 299201, 3047304, 3057979, 3685789, 3685786, regarding debts owed to Florida Hospital by the Kelemens.  **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

3.     These collection notes serve as PCS.'s institutional (assigned account number) memory regarding the collection activities of its accounts and such records are kept in the ordinary course of business for PCS.  **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

4.     PCS maintains policies and procedures for handling of collection accounts in compliance with the Fair Debt Collection Practices Act. A copy of each relevant policy and procedure is attached hereto as an exhibit to PCS' affidavit.; **[See: Affidavit of Matt Kiefer, Professional Collection Systems, Exhibits B-G]**

5.      At all times material, PCS used Dantom as its letter vendor for outgoing mail, including its initial collection notices required under Section 1692g to its debtors. PCS also, on occasion, sends collection notices which are generated by PCS. **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

6.      PCS maintains policies & procedures regarding preparation and mailing of its Section 1692g validation notices, whereby its computer system automatically generates pre-formatted letters to debtors, in a format that complies with Section 1692g of the Fair Debt Collection Practices Act and such letter is mailed to the subject debtor on each account placed with PCS.  **[See: Affidavit of Matt Kiefer, Professional Collection Systems, Exhibits B-G]**

7.      On May 2, 2010, a validation notice was generated, forwarded to Dantom, the letter vendor for mailing, and mailed to Stephen Kelemen at 2407 Ponkan Summit Drive, Apopka, Florida 32712. **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

8.      At all material times hereto, the Kelemens resided at 2407 Ponkan Summit Drive, Apopka, Florida 32712**.  [See Exhibit 3; Deposition Excerpts of Gail Kelemen, Page 8]**

9.      PCS has policies and procedures in place for communication with debtors generally, and for communication with debtors upon notification of attorney representation. A copy of this policy and procedure.**[See: Affidavit of Matt Kiefer, Professional Collection Systems, Exhibit B-G]**

10.      PCS provides training for communication with debtors generally, and for communication with debtors upon notification of attorney representation. **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

11.     All PCS employees go through a training process including but not limited to sitting in classroom going over FDCPA and HIPAA rules and take a test produced by the ACA International which is a "knowledge based" test on the FDCPA. Each collector must pass this test before the collector can begin working with an experienced collector, listening in on calls and eventually answering calls and making calls through the dialer. The collectors are monitored by a combination of their trainer, their peers, supervisor and/or other management personnel. Additionally, the collectors are audited real time sporadically and unbeknownst to them by a supervisor by a manager when they are on the dialer on a random basis. Any complaints are documented, investigated and negatively impact their incentive even if the complaint can't be validated. **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

12.     PCS has policies and procedures in place regarding the frequency of contact with debtors. A copy of this policy and procedure**[See: Affidavit of Matt Kiefer, Professional Collection Systems, Exhibit B-G]**

13.     According to PCS's policies and procedures, a collector contacts a debtor no more frequently than once every seven (7) days if there is a "positive contact" meaning they have spoken to the debtor. **[See: Affidavit of Matt Kiefer, Professional Collection Systems and Exhibit B-G]**

14.     PCS has policies and procedures in place to verify the accuracy and legitimacy of debts in accordance with the Fair Debt Collection Practices Act. A copy of this policy and procedure. **[See: Affidavit of Matt Kiefer, Professional Collection Systems, Exhibit B-G]**

15.     PCS relies on the accuracy of account information it receives from Florida Hospital, as the original creditor on the accounts. **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

16.     PCS receives periodic reporting from Florida Hospital which update accounts with payment information and balance adjustments through a combination of electronic files and email notifications. **[See: Exhibit 1 Affidavit of Matt Kiefer, Professional Collection Systems]; [ See: Exhibit 2": Affidavit of Coy Ingram, Florida Hospital]**

17.     PCS utilizes Columbia Ultimate collections software called ManageMed which has the ability to "link" like accounts and packet them together which makes for more efficient collections, to "help" prevent a debtor and/or spouse from receiving multiple contacts in a small period of time. **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

18.     This software, for instance, allows PCS to group separate accounts (debts) owed by the same individual to prevent the debtor from receiving separate communications on each account. For example, a debtor could have 15 accounts sent in a week from various providers and while each one will be treated as "an account" and receive separate letters for the first validation notice, the accounts are packeted and worked as "one big account". However, as the account ages, and fall out of a work que (for instance get credit reported and change desks) new accounts that come in "start" work activity –for the new account only- but a collector, upon receiving the account in the work que can "view" an entire packet of accounts and make decisions accordingly. Additionally, the dialer has controls in it that prevent multiple accounts from being called (the same phone number) unless there is no contact. It will try in the morning to reach the debtor, but if no answer it may call in the afternoon if the work volume permits the

account to go back through the cycle. However, if a message is left, the dialer will not allow that call to be called back for at least three days. **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

19.     This is a setting in the IAT dialer software and very common practice in collections industry. **[See: Affidavit of Matt Kiefer, Professional Collection Systems]**

20.     Florida Hospital has verified that each and every account placed with PCS was due and owing by the Kelemens and that the account balances were accurate on the date of placement with PCS.  **[See affidavit from Coy Ingram, Florida Hospital]**

21.     Dantom has verified that it received the letter requests and data for each of the subject accounts for the Kelemens and verified that they mailed such letters to the Kelemens at the address provided by PCS. **[See Exhibit 4: Affidavit from Dantom]**

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment *"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."*  In order to prevail on a motion for summary judgment, the moving party must demonstrate that no genuine issue of material fact exists and that judgment as a matter of law should be granted in the moving party's favor.  Smith v. Hudson, 600 F.2d 60, 63 (6th Cir.1979).  In considering a motion for summary judgment, the court must view all facts and inferences to be drawn therefrom in the

light most favorable to the non-moving party.  <u>Matshushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); <u>SEC v. Blavin</u>, 760 F.2d 706 (6th Cir.1985).  Although the moving party has the burden of showing that no genuine issue of material fact exists, the non-moving party, however, may not merely rest on conclusory allegations contained in the complaint, but must respond with affirmative evidence supporting its claim and establishing the existence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); not every factual dispute between the parties will prevent summary judgment.  The disputed facts must be material.  They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  The dispute must also be genuine.  The facts must be such that, if they were proven at trial, a reasonable jury could return a verdict for the non-moving party.  <u>Id</u>.  The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial.  <u>First National Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89 (1968).

## <u>ARGUMENT IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT WITH CITATIONS TO AUTHORITY</u>

### <u>I.</u>

### <u>Defendant is entitled to summary judgment since it is undisputed that PCS mailed the Kelemens its Section 1692g notice on each account sought for collections</u>

Defendant, PCS asserts that it is entitled to judgment as a matter of law as to Plaintiffs assertion that PCS violated Section 1692g by the Plaintiffs failure to receive the required Section 1692g notice under the FDCPA.  This same argument was raised in the Ninth Circuit case <u>Mahon v. Credit Bureau of Placer County</u>, 171 F.3d 1197 (9th Cir. 1999).  In <u>Mahon</u>, the court

held that the FDCPA's validation of the debt notice provision requires only that the notice be "sent" and the debt collector need not establish actual receipt by the debtor. Id. at 1201

Defendant, PCS asserts that it is undisputed that its computer system and its letter vendor has provided evidence that a 1692 letter was processed and mailed to the Plaintiffs at the address as verified as accurate in Ms. Kelemen's deposition testimony. **[See affidavits of Matt Kiefer and Dantom]** It is well settled that a debt collector is not liable under the FDCPA based on the contention that the Plaintiffs did not receive the required letter, but mere proof that the letter was mailed to a proper address established receipt as a matter of law under the well recognized "mail box" rule. See: Mahon, supra. Defendant, PCS has provided evidence through the affidavit statements of Matt Keifer and PCS' letter vendor, Dantom, that each of the 1692g letters were mailed to the Plaintiffs' address. **[See affidavits of Matt Kiefer and Dantom]** Oddly, Plaintiffs had no difficulty receiving subsequent communications from PCS as evidenced by receipt of the collection letter discussed in Section II below as well as letters received as testified in Ms. Kelemen's deposition. **[See Exhibit 3 Deposition Excerpt of G. Kelemen, page 24-25]** Although, the "mail box" rule is a rebuttal presumption, Plaintiffs have undisputedly verified that the address used is accurate and therefore the mail was not returned to PCS as undeliverable. See: Anderson v. United States, 966 F.2d 487 (9th Cir. 1992)

Therefore, PCS respectfully requests that this court grant its motion for summary judgment and against the Plaintiffs as it relates to the alleged violation under Section 1692g since it is undisputed that PCS mailed the required notices and as a matter of law, is entitled to the presumption of receipt by the Plaintiffs under the often-recognized "mail-box" rule.

## II.

### Defendant is entitled to summary judgment since the phrase " additional collection activity" in PCS's collection letter does, not as a matter of law, lead the least sophisticated

**consumer to falsely believe that litigation is imminent or that PCS implies or threatens the use of any post-judgment remedies**

"When determining whether Section 1962(g) has been violated, most courts use 'an objective standard', measured by how the 'least sophisticated consumer' would interpret the notice received from the debt collector." Savino v. Computer Credit, Inc., 164 F.3d 81,85 (2d Cir. 1998) *citing* Russell v. Equifax A.R.S.,, 74 F.3d 30, 34 (2nd Cir. 1996) (*citing, inter alia,* Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir.1993)).   "The least sophisticated debtor standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor'" Smith v. Computer Credit, Inc., 167 F.3d 1052, 1054 (6th Cir.1999) (*citing* Swanson v. Southern Or. Credit Service, 869 F.2d 1222, 1227 (9th Cir. 1988)).   "Actual confusion is not necessary; the dunning letter is examined through the eyes of a hypothetical 'unsophisticated consumer' [or least sophisticated consumer]" Keen v. Omnibus International, 1998 WL 485682, at 2 (N.D. Ill. August 12, 1998).   "[T]he true test remains whether the letter, taken as a whole, would confuse an unsophisticated consumer about his or her rights." Id. "Nonetheless, the case law makes the question whether language in a collection letter overshadows or contradicts the validation notice so as to confuse a least sophisticated debtor is a question of law." Terran v. Kaplan, 109 F.3d 1428, 1432 (9th Cir. 1997); Swanson, 869 F.2d at 1225- 26; Russell, 74 F.3d at 33, Graziano v. Harrison, 950 F.2d at 111, 114 (3d Cir. 1991). "While protecting naive consumers, the standard also prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." U.S. v. National Financial Services, Inc., 98 F.3d 131, 135-6 (4th Cir. 1996); Creighton v. Emporia Credit Service, Inc., 981 F.Supp. 411, 414 (E.D.Va 1997)

There is no dispute between the parties that the debt collection letter received by the Plaintiffs was sent by the Defendant in an attempt to collect debts owed to the original creditor. However, Defendant argues that it is entitled to a motion for summary judgment in that the phrase "additional collection activities" does not lead the least sophisticated consumer to believe or understand that the Defendant is threatening litigation or threatening the use of post-judgment collection remedies such as garnishment, attachment or other form of property seizure as suggested by the Plaintiffs in this case.  "The unsophisticated debtor is regarded as 'uninformed, naive or trusting' but nonetheless is considered to have a 'rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences.'" <u>Fields v. Wilber Law Firm, P.C.</u>, 383 F.3d 562, 564 (7th Cir. 2004) A collection letter cannot be confusing as a matter of law or fact 'unless a significant fraction of the population would be similarly misled.'" <u>Pettit v. Retrieval Masters Creditors Bureau, Inc.</u>, 211 F.3d 1057, 1060 (7th Cir. 2000)

The Plaintiffs' argument is similar to the case in which lawyers mail collection letters using the firm's letterhead. However, courts, even in that context, have held that even the use of a law firm's letterhead in order to collect a debt, without an overt threat of litigation, does not imply that legal action or litigation is imminent or contemplated against the consumer. "Courts reaching the specific issue of whether law firm letterhead is sufficient to constitute a violation of § 1692(e)(5) have answered in the negative. *See, e.g.,* <u>Veillard v. Mednick,</u> 24 F.Supp.2d 863, (N.D.Ill.1998) ("there is nothing in the letter that refers to legal action and the mere inference that legal action could be taken because the letter is on law firm letterhead is not enough for § 1692e(5) purposes"). *See also:* <u>Abels v. JBC Legal Group</u>, 428 F.Supp.2d 1023 (N.D. Cal. 2005) . In this case, Defendant asserts that Plaintiffs' allegation that such a phrase suggests or implies litigation or post-judgment remedies defies the standard of reasonableness and falls into the

category of a "bizarre or idiosyncratic interpretation" in order to create a claim of liability. Not even the "least sophisticated consumer" would make such a illogical leap in reading of this collection phrase to warrant a review of potential liability under the FDCPA.

Therefore, PCS respectfully requests that this court grant its motion for summary judgment and against the Plaintiffs as it relates to the alleged violation of the FDCPA since the phrase "additional collection activities" does not reasonably imply or suggest litigation or post-judgment remedies, and as a matter of law, is PCS entitled to judgment as a matter of law.

## III.

### Defendant is entitled to summary judgment since there is no evidence that PCS intentionally caused the telephone to continuously or repeatedly ring with the intent to harass the Kelemens

"A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. A debt collector that causes a person's telephone to ring "repeatedly or continuously with [the] intent to annoy, abuse, or harass" is deemed to have engaged in harassing, oppressive, or abusive conduct. 15 U.S.C. § 1692d(5). Additionally, a debt collector that engages "any person in telephone conversation repeatedly or continuously with [the] intent to annoy, abuse, or harass" is deemed to have engaged in harassing, oppressive, or abusive conduct. 15 U.S.C. § 1692d(5). "Ordinarily, whether conduct harasses, oppresses, or abuses will be a question for the jury." Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1179 (11th Cir.1985). Intent may be established by circumstantial evidence or inferred from a party's actions. In re Jennings, 533 F.3d 1333, 1339 (11th Cir.2008). "A plaintiff must show that the repeated calls were made with the intent to annoy, abuse, or harass." See Gorman v. Wolpoff & Abramson, LLP, 435 F.Supp.2d 1004, 1012 (N.D.Cal.2006), rev'd on other grounds, 584 F.3d 1147 (9th Cir.2009). "Congress did not intend

the FDCPA to completely bar any debt collection calls." *Id.* In determining liability under §

1692d(5), courts often consider the volume and pattern of calls made to the debtor. Sanchez v.

Client Servs., Inc., 520 F.Supp.2d 1149, 1161 (N.D.Cal.2007); *see also* Kuhn v. Account Control

Tech., Inc., 865 F.Supp. 1443, 1453 (D.Nev.1994) (granting summary judgment to plaintiff

where defendant made six calls in twenty-four minutes); Bingham v. Collection Bureau, Inc.,

505 F.Supp. 864, 873 (D.N.D.1981) (finding violation where defendant immediately called back

after plaintiff hung up).

In this case, there is no evidence or testimony that indicates that any representative of

PCS engaged in conduct in which multiple calls were placed during a single day or with the

intent to call repeatedly or in such frequent succession as to harass the Kelemens in violated of

Section 1692d(5). The PCS collection notes indicate the call frequency for the various accounts

owed by each of the Kelemens during the periods of time**. [See Exhibit 1-A: PCS Collection

Notes]; [Exhibit 5: PCS Summary of call frequency]** Finally, PCS has provided its policies

and procedures which set out a call frequency procedure to ensure that consumers do not receive

multiple telephone calls during the same day or not more frequent than every 7 days. **[See

Exhibit 1-E]**

Therefore, PCS respectfully requests that this court grant its motion for summary

judgment and against the Plaintiffs as it relates to the alleged violation of Section 1692d(5) since

there is no material issue of fact to support any alleged intentional conduct regarding the call

frequency of the collection attempts directed toward the Kelemens in this case and thus PCS

entitled to judgment as a matter of law.

## IV.

## Defendant is entitled to summary judgment since there is no genuine issue of material fact in dispute that the debts were legitimately owed by the Kelemens

The Kelemens further contend that PCS were attempting to collect balances for services rendered that were not owed by the Kelemens. However, PCS asserts that at no time during the collection of any of the accounts did the Kelemen's request verification as provided under Section 1692(g) and therefore could consider the debts to be valid and undisputed.

More importantly, PCS relied on information provided to it by its creditor-client, Florida Hospital and the case law is clear that collectors may rely on the information provided by the creditor and are not required under the FDCPA to conduct an independent evaluation of the amount and validity of the underlying debt. In <u>Clark v. Capital Credit & Collection Serv.</u>, 460 F.3d 1162, 1177 (9th Cir. 2006), the court held that "[l]ogically, if a debt collector reasonably relies upon the debt reported by the creditor, the debt collector will not be liable for any errors." Similarly, in <u>Smith v. Transworld Sys, Inc.</u>, 953 F.2d 1025, 1032 (6th Cir. 1992), the court considered whether the failure of an agency to verify the debt after receipt of the consumer's cease and desist letter was a violation of the FDCPA. The court held the debt collector "did follow the guidelines of 15 U.S.C. § 1692g(b) by ceasing and desisting from collection of the debt. Because defendant ceased collection activities, defendant was not obligated to send a separate validation of the debt to the plaintiff." <u>Id.</u> at 1031. Further, the <u>Smith</u> court was asked to review whether the debt collector violated the FDCPA by misrepresenting the amount of debt in violation of 15 U.S.C. § 1692e(2)(A). The court held "the statute does not require an independent investigation of the debt referred for collection." <u>Id</u>. at 1033; *See also* <u>Jenkins v. Heintz</u>, 124 F.3d 824, 833-34 (7th Cir. 1997).

In this case, the original creditor, Florida Hospital has provided a sworn statement indicating that all of the account balances owed by either of the Kelemen's constituted either "deductible payments" or patient required "co-pays" that are not subject to insurance. **[See**

**Exhibit 2: Affidavit of Coy Ingram, Florida Hospital]**  Further, the Kelemen's claim that they were not responsible for payment since they had insurance that should have paid the bill does not relieve the patient of the ultimate responsibility to ensure that the bills are paid to the medical providers. Defendant therefore asserts that there is no material issue of fact in dispute that the accounts referred from Florida Hospital to PCS for collection against the Kelemens were due and owing and thus PCS can't be held liable under the FDCPA in this regard.

Therefore, PCS respectfully requests that this court grant its motion for summary judgment and against the Plaintiffs as it relates to the alleged violation under the FDCPA since it is undisputed that the underlying debt obligations were due and owing by the Kelemens and thus PCS's collection activities were not in violation of the FDCPA.

## <u>V.</u>

### <u>Defendants are entitled to summary judgment since there is no evidence that PCS verbally harassed the Kelemens in violation of the FDCPA</u>

Section 1692d prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Whether the conduct violates the statute is viewed from the perspective of a consumer whose circumstances makes her "relatively more susceptible to harassment, oppression, or abuse." <u>Jeter</u>, 760 F.2d at 1179. The statute provides nonexclusive examples of prohibited harassment, including "the use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader." 15 U.S.C. § 1692d(2); see also <u>Jeter</u>, 760 at 1175 ("[section] 1692d is explicitly not limited to the conduct proscribed by subsection (1)-(6)"). Such offensive language "might encompass name calling, racial or ethnic slurs, and other derogatory remarks which are similar in their offensiveness to obscene or profane remarks." <u>Jeter</u>, 760 F.2d at 1178. The <u>Jeter</u> court further stated "when read in context, subsection (2) was

meant to deter offensive language which is at least akin to profanity or obscenity." Id.

In this case, Montgomery v. First Florida Financial Group, 2008 WL 3540374 (M.D. Fla. August 12, 2008) this court held that Florida First's agent called Montgomery a "liar," told Montgomery that her mother also was a "liar" and "repeatedly berate[d]" Montgomery in one conversation that she was not honest because she wrote a bad check.  was not a violation of the FDCPA.  This court concluded that the term "liar" falls short of language "akin to profanity or obscenity" and, therefore, does not violate the statute. See also  Thomas v. LDG Fin. Servs., Inc., 463 F.Supp.2d 1370, 1373 (N.D.Ga.2006) (alleged conduct by debt collector during telephone conversation, in telling debtor that they were going to get their money one way or another, yelling that Georgia was a garnishable state, then hanging up, and asking debtor what her problem was because she was making the same salary as she did when she was paying her bills, did not rise to the level of harassment prohibited by the FDCPA); According to the court, Montgomery's Section 1692d claim "also fails because the complaint fails to allege facts that show that Montgomery was "relatively more susceptible to harassment, oppression, or abuse."

In comparison, Kelemen provides no evidence that she was harassed during any of the telephone communications.[1] Plaintiffs Amended Complaint asserts that the Defendant used "profanity" when speaking with Gail but fails to identity any named person, any date and time or what the nature of the alleged profanity.  As stated in footnote 1, the only reference to this issue was mentioned in Ms. Kelemen's deposition taken prior to the filing of the Amended Complaint on July 21, 2010 in which she claims that an unknown individual told her to "paid her damn

---

[1] The allegation of the use of profanity was asserted for the first time in the Amended Complaint filed on July 21, 2010 which was after the date in which Ms. Kelemen was deposed by the Defendant.  Defendant recognizes that Ms. Kelemen stated in her deposition that an unknown male caller at some unknown date and time told her to *"pay your damn bills"*[Exhibit 3 page 45]  Assuming that this is the only basis for the allegation contained in Paragraph 16 of the  Amended Complaint, Defendant asserts that this statement, even if true for purposes of this motion, does not rise to the level of profanity violative of the FDCPA.

bill." Given the holdings in the <u>Montgomery</u> and <u>Thomas</u> cases cited above, the use of the word

"damn" used in the represented context and in light of today's societal parlance, in no way rises

to the level of being called a "liar." *See* <u>Duncan v. United States,</u> 48 F.2d 128 (9th Cir. 1931).

"Although the district court's instruction defining 'profane' is not criticized by appellant, the

government does not contend that the words used were 'profane.' Since the only words attributed

to appellant which could even remotely be considered as being 'profane' were 'God **damn** it,'

which were also uttered in anger, there is no basis for holding that the language was ' profane'

within the meaning of the statute." <u>Gagliardo v. United States</u>, 366 F.2d 720, 725 (9th Cir. 1966)

As such, Defendant is entitled to judgment as a matter of law.

## <u>VI.</u>

## <u>Defendant is entitled to summary judgment as PCS did not violated in the FDCPA in communicating with the Kelemens regarding a newly placed account despite the representation of Krohn and Moss in this lawsuit.</u>

Next,  Plaintiff asserts that PCS violated the FDCPA by attempting to communicate with

the Kelemens despite knowledge of the representation of the law firm of Krohn and Moss in this

lawsuit.

First, Plaintiff presents no evidence that PCS continue to communicate with the Kelemen

regarding accounts to which PCS had been informed that their lawyers were providing

presentation. It is clear from the pattern of conduct and basis on the numerous delinquent

accounts owed by each of the Kelemens that the Kelemens continued to return to Florida

Hospital for medical treatment and services during the pendency of this litigation and thus

continued to pay for these services leaving numerous separate debts.  Pursuant to the Fair Debt

Collection Practices Act, "*if the debt collector knows the consumer is represented by an attorney*

***with respect to such debt*** *and has knowledge of" (emphasis added).* It is clear from the various

collection notes that after Plaintiffs filed their complaint against PCS making allegations contained in the original Complaint,  Plaintiffs continued to incur past due obligations with Florida Hospital which were placed with PCS for collection. As these debts were new debt obligations, PCS did not have actual knowledge that these lawyers were representing the Kelemens as to those newly incurred debts and thus could not have violated 15 U.S.C. Section 1692c(a)(2). It is also clear that once Plaintiffs counsel contacted the undersigned regarding their representation of the Kelemens as to these newly incurred debt obligations, PCS, in accordance with the FDCPA, cease all communications on any accounts pending as of that date. [2]

## VII.

### Defendant PCS is entitled summary judgment as to all counts under the FDCPA's "bona fide error" defense as PCS has demonstrated by undisputed evidence that any alleged actions were unintentional and occurred despite reasonable policies and procedures maintained by PCS to prevent such errors.

In the alternative, PCS also contends it is protected by the "bona fide error" defense under the FDCPA.  In order to demonstrate its entitlement to judgment as a matter of a law under the FDCPA "bona fide error" defense found at 15 U.S.C. § 1692k(c), PCS must show by a preponderance of the evidence that: (1) the violation was unintentional and (2) occurred notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

As to each alleged violation, PCS has demonstrated that it maintains reasonable policies and procedures in place to ensure that such violations do not occur. A copy of each and every policy governing these allegations are contained as exhibits to the Affidavit of Matt Kiefer of PCS. As discussed, a debt collector may rely on information provided by the creditor to support a "bona fide error" defense if it has reasonable procedures in place to prevent errors from

---

[2] There is nothing under the FDCPA that mandates that a debt collector must forego collection activity on all future accounts and assume that a retained lawyer on one debt is going to be retained counsel on all past, present and future debts incurred by the debtor.

occurring.  Cook v. General Revenue Corporation, 2001 WL 893692 (E.D.Pa. 2001), citing

Adams v. Law Offices of Stuckert & Yates, 926 F.Supp. 521, 529 (E.D.P.A. 1996) and Smith v.

Transworld Sys. Inc., 953 F.2d 1025, 1032 (6th Cir. 1992).  The mere assertion by the Kelemens

that they were being contacted by PCS to collect on debts that they alleged they is not sufficient

for a claim of false or misleading representations under 15 U.S.C. §1692e. Taylor v. Midland

Credit Management, Inc., 2008 WL 544548 (W.D.Mich. 2008) *quoting* Bleich v. Revenue

Maximization Group, Inc., 233 F.Supp.2d 496, 501(E.D.N.Y. 2002)("[W]here a debt collector

has included appropriate language regarding the FDCPA debt validation procedure, the

allegation that the debt is invalid, standing alone, cannot form the basis of a lawsuit alleging

fraudulent or deceptive practices in connection with the collection of a debt.")

PCS reasonably relied upon the information provided to it by the original creditor when it

mailed the underlying collection communication. **[Ex. 1-Affidavit of Matt Keifer];** Further,

PCS maintains sufficient policies and procedures governing the mailing of initial collection

communications; the frequency in which communications are directed towards consumers, the

ceasing of collection communications when notified of attorney representation; and procedures

to verify the accuracy and legitimacy of the debts with the original creditor  in compliance with

the FDCPA, as well as the handling of disputes which are forwarded to its attention within the

thirty (30) day FDCPA validation period.  **[Ex. 1-Affidavit of Matt Kiefer]**

Based on the foregoing, PCS asserts it is entitled to summary judgment as a matter of

law.

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a copy of the foregoing has been electronically filed on

**September 10, 2010**, with the Clerk of the Court by using the CM/ECF system, which Notice

will be electronically mailed to JAMES PACITTI, ESQUIRE, Krohn & Moss, Ltd., 10474 Santa

Monica Blvd., Suite 401, Los Angeles, CA 90025.

<u>**s/ Ernest H. Kohlmyer, III**</u>
Ernest H. Kohlmyer, III
Florida Bar No. 0110108
SOUTH MILHAUSEN, P.A.
Gateway Center
1000 Legion Place, Suite 1200
Orlando, Florida 32801
(407) 539-1638
(407) 539-2679 (fax)
skohlmyer@southmilhausen.com
Attorneys for Defendant